980 F.2d 585
 79 Ed. Law Rep. 408
 Stanley E. ASH; Barbara Ash; Christopher Ash, a minor By
and Through his natural parents, Stanley E. Ash
and Barbara Ash,
Plaintiffs-Appellees/Cross-Appellants,
v.
LAKE OSWEGO SCHOOL DISTRICT, NO. 7J,
Defendant-Appellant/Cross-Appellee.
 Nos. 91-36007, 91-36008.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1992.
Decided Nov. 25, 1992.
 
 Robert F. Blackmore, Dunn, Carney, Allen, Portland, Or., for plaintiffs-cross-appellees/cross-appellants.
 Thomas S. Moore, Portland, Or., for defendant-cross-appellant/cross-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before: TANG, BRUNETTI, and FERNANDEZ, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Lake Oswego School District ("LOSD" or "School District") appeals the judgment of the district court following a bench trial. The district court ruled in favor of plaintiffs Stanley, Barbara, and Christopher Ash on their claims under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"). The court concluded that LOSD failed to provide Christopher with a free appropriate public education as required by the IDEA. Further, the court found that the Ashes were entitled to reimbursement for having provided Christopher with the education to which he was entitled under federal law. The Ashes cross-appeal on the ground that they are entitled to reimbursement beyond that provided by the district court. We affirm the judgment in all respects.
 
 
 2
 The facts of this case are set forth in the well-written, well-reasoned opinion of the district court. Ash v. Lake Oswego Sch. Dist. No. 7J, 766 F.Supp. 852 (D.Or.1991). We see no need to duplicate these commendable efforts and so we consider the parties' arguments only insofar as they would prevent us from adopting the district court's opinion as our own.
 
 
 3
 The central issue in this case is whether the 1989 Individualized Education Program ("IEP") mandated by IDEA, see 20 U.S.C. §§ 1401(a)(18)(D), 1412(1), 1413(b), 1414(a)(5), and prepared by LOSD can provide educational benefit to Christopher Ash, an autistic child, without placing him in a "residential setting." See 766 F.Supp. at 858-61 (describing both administrative finding that residential placement was unnecessary as well as contrary testimony presented to district court); id. at 861-63 (discussing standards by which IEP is measured). In other words, in 1989 could Christopher learn outside of a residential placement? The district court answered this question in the negative and therefore found the School District's 1989 IEP to be flawed. Id. at 863.
 
 
 4
 The School District raises essentially three challenges to the district court's decision. First, LOSD contends that the district judge applied an incorrect standard in assessing the sufficiency of the 1989 IEP prepared by the School District. Second, LOSD argues that insufficient weight was given to the Oregon administrative hearing officer's determination that Christopher did not require residential placement in 1989. Finally, the School District asserts that the district court clearly erred in reversing the administrative determination. Below, we discuss these contentions and the Ashes' cross-appeal.
 
 I.
 
 5
 The School District's first challenge concerns the standard by which the district court measured the 1989 IEP. In reviewing the merits of an IEP, the question for federal courts is whether the program is "reasonably calculated to enable the child to receive educational benefits." Board of Educ. v. Rowley, 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982); accord W.G. v. Board of Trustees, 960 F.2d 1479, 1483 (9th Cir.1992). The "free appropriate public education" to which a disabled child is entitled under IDEA "does not mean the absolutely best or 'potential-maximizing' education." Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir.1987). Instead, "states are obliged to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.' " Id. (quoting Rowley, 458 U.S. at 201, 102 S.Ct. at 3048).
 
 
 6
 The School District argues that the district court lost sight of this standard and instead measured the School District's IEP to determine whether it would permit Christopher to be "successful outside of a classroom setting." 766 F.Supp. at 863. The district court's comment, however, merely reiterates the testimony of plaintiffs' expert, Dr. Cerreto. See id. at 860 (" 'Education for Chris is the ability to be successful outside certainly the classroom and that has incorporated a lot more things than just traditional academics.' ") (quoting witness). In referring to success outside of the classroom, Dr. Cerreto was emphasizing that, to assess Christopher's learning ability, one must refer to skills not usually taught in the conventional classroom. As an example, Dr. Cerreto referred to toilet training. The district court clearly understood this, as indicated by its conclusion that "[d]aily living skills, such as toileting and eating and dressing, can only be taught to [Christopher] and reinforced for him in the consistency of a residential setting." Id. at 863.
 
 
 7
 We find no error in the standard applied by the district court to assess the 1989 IEP prepared by LOSD. The court explained the Rowley standard in detail. See id. at 861-63. It further described the issue as whether the IEP "denies Christopher sufficient access to a free, appropriate public education through which Christopher can derive some educational benefit." Id. at 863 (emphasis added). Finally, the court concluded that "LOSD has not demonstrated that its IEP would provide the type and amount of consistency necessary in order for Christopher to obtain some educational benefit from its implementation." Id. (emphasis added). We thus reject the School District's first contention.
 
 II.
 
 8
 LOSD further argues that the district court failed to give sufficient weight to the state hearing officer's finding that the child did not require residential placement. In reviewing findings made during the administrative proceedings contemplated by 20 U.S.C. § 1415(b)(2), (c), we have adopted the following observation of the First Circuit:
 
 
 9
 The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance of the evidence, does not apply. This does not mean, however, that the findings can be ignored. The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole.
 
 
 10
 Town of Burlington v. Department of Educ., 736 F.2d 773, 792 (1st Cir.1984), aff'd sub nom. School Comm. v. Department of Educ., 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), and quoted in Gregory K., 811 F.2d at 1311. Thus, as the district judge here recognized, federal courts cannot ignore the administrative findings. See 766 F.Supp. at 861 ("In reviewing the case, the trial court must give specific consideration to the findings of the [administrative] hearing officer."). Ultimately, however, the weight to be accorded administrative findings under the IDEA is a matter within the discretion of the federal courts. See W.G., 960 F.2d at 1483.
 
 
 11
 On review of the district court's opinion, we cannot say that the district court failed to give adequate consideration to the administrative record. In reaching its decision, the district court thoroughly reviewed the evidence presented before the state hearing officer. 766 F.Supp. at 856-59. Only after reviewing both the record and the supplemental testimony did the district judge conclude that residential placement for Christopher was necessary. Id. at 863 ("After a review of the record and the evidence presented to this court, the court is convinced that, at this point in time, Christopher must receive educational services in a residential setting if he is to obtain an appropriate education under the [IDEA]."). The court further explained that it found most persuasive the testimony of Dr. Cerreto and that the administrative officer was without the benefit of her testimony. In sum, we do not agree with the School District that the trial judge failed to take adequately into account the administrative record in arriving at a decision.
 
 III.
 
 12
 Finally, LOSD contends that the district court mistakenly concluded that Christopher required residential placement. We review for clear error the district court's factual determination that Christopher was incapable of deriving educational benefit outside a residential placement during the 1989-90 school year. See W.G., 960 F.2d at 1483 (findings of fact reviewed for clear error).
 
 
 13
 The School District's most specific allegation of factual error is that the district court erroneously focused on the 1991 educational needs of the autistic child when, in fact, the proper focus was on the child's needs for the school year during which the 1989 IEP was prepared. We agree with the School District that Dr. Cerreto and the trial court both indicated at times that they were looking to Christopher's needs at the time of trial rather than at the time of the 1989 IEP.
 
 
 14
 We do not agree, however, that these considerations were irrelevant or resulted in clear error. For one thing, the judgment in this case requires LOSD to support the autistic child's current and future residential placement as well as to pay for the cost of his placement in the past. Under the circumstances, it was entirely appropriate for the district court to look beyond the needs of the child in 1989.
 
 
 15
 Furthermore, Christopher's needs at the time of the district court hearing undoubtedly reflect something of his needs in 1989. The School District provides no indication that Christopher somehow regressed between 1989 and 1991. If anything, Dr. Cerreto's bleak assessment of Christopher in 1991 indicates that the child's need for residential placement was even greater in 1989. We must recognize the need for such extrapolation given the likely delay in bringing IDEA cases before district courts. Cf. School Comm. v. Department of Educ., 471 U.S. 359, 370, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985) (discussing need to compensate for delay in IDEA cases by providing for reimbursement of placement expenses).
 
 
 16
 Moreover, the district court did not uniformly focus on the autistic child's condition in 1991. The court's opinion makes clear that the first and foremost question addressed by the court was Christopher's condition in 1989. Thus, the district court did not err in discussing 1991 data.
 
 
 17
 We have reviewed the School District's remaining factual contentions. Because the record in this case fails to impart "a definite and firm conviction that a mistake has been committed," United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991), we find no basis for reversal.
 
 IV.
 
 18
 On cross-appeal, the Ashes contend that their right to reimbursement accrued long before the September 1989 date established by the district court. See 766 F.Supp. at 863-65. The court settled upon this date because it represented the first time "LOSD had been asked to provide services to Christopher and had been given a reasonable opportunity to complete the process of evaluating Christopher and making a placement recommendation." Id. at 864. The Ashes contend that their right to reimbursement accrued as early as 1983 because the School District had failed to follow certain procedures mandated by the IDEA.
 
 
 19
 In arriving at its conclusion, the district court relied on a case which places a significant burden on parents to bring their disabled children to the school district's attention before they can resort to self-help with the hope of reimbursement. See id. (citing Hunter ex rel. Hunter v. Seattle Sch. Dist. No. 1, 46 Wash.App. 523, 731 P.2d 19 (1987)). Yet the IDEA also burdens participating states to seek out disabled children. Specifically, "participating states must implement policies and procedures such that all children residing in the State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and evaluated." Hacienda La Puente Unified Sch. Dist. v. Honig, 976 F.2d 487, 491 (9th Cir.1992) (quotation omitted). Furthermore, in proceeding under the IDEA, a school district must notify parents whenever it proposes (or refuses) to initiate (or change) "the identification, evaluation, or educational placement of the[ir] child or the provision of a free appropriate public education to the[ir] child." 20 U.S.C. § 1415(b)(1)(C). The notice required in such instances must also inform parents of their rights under the IDEA. Id. § 1415(b)(1)(D).
 
 
 20
 Recognizing that states participating in IDEA owe a certain obligation to the disabled children within their borders, the decision in Hall ex rel. Hall v. Vance County Bd. of Educ., 774 F.2d 629 (4th Cir.1985), affirmed an order reimbursing parents where the school district "egregiously violated the procedural requirements" of the IDEA. Id. at 632. The court did so despite the parents' initial failure to confront the school district regarding its actions and to pursue immediately their rights under the IDEA. Cf. Town of Burlington, 736 F.2d at 799 (recognizing as a factor in awarding reimbursement the "distinction between a unilateral parental transfer made after consultation with the school system, yet still an action without the system's agreement, and transfers made truly unilaterally, bereft of any attempt to achieve a negotiated compromise and agreement on a private placement"). We have previously looked to the Hall decision for guidance. See W.G., 960 F.2d at 1484-87.
 
 
 21
 Of course, not every procedural flaw will give rise to a right of reimbursement. Id. at 1484. In particular, we reject the Ashes' argument that causation is irrelevant in determining whether a school district's procedural failings will permit reimbursement. See Hall, 774 F.2d at 633 n. 4.
 
 
 22
 Having reviewed the Ashes' arguments and the events detailed in the district court's opinion, we agree with the trial judge that no right of reimbursement accrued to the Ashes prior to September 1989. This case is significantly different from Hall, where the school district's obligations to the disabled child were clear and the child was continuously available to the school district for assessment. LOSD's procedural failures, if any, prior to 1989 are not sufficient to find that the School District denied Christopher a free appropriate public education. The Ashes therefore are not entitled to reimbursement for their pre-1989 education expenses.V.
 
 
 23
 For the reasons stated by the trial judge and elaborated upon here, we affirm the order of reimbursement and the judgment of the district court. The Ashes' request for attorney's fees incurred in defending the School District's appeal is granted. See Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1286 (9th Cir.1991). The case is remanded for a determination of the appellate fee award.
 
 
 24
 AFFIRMED and REMANDED.