**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FOREST GROVE SCHOOL DISTRICT,
            *Plaintiff-Appellee,*

            v.

T.A.,

            *Defendant-Appellant.*

No. 05-35641

D.C. No.
CV-04-00331-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
March 11, 2008—Portland, Oregon

Filed April 28, 2008

Before: Pamela Ann Rymer, Susan P. Graber, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Rymer

4537

## COUNSEL

Mary E. Broadhurst, Mary E. Broadhurst, P.C., Eugene, Oregon, for the defendant-appellant.

Andrea L. Hungerford and Richard G. Cohn-Lee, The Hungerford Law Firm, LLP, Oregon City, Oregon, for the plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

Defendant T.A., a former student of Plaintiff Forest Grove School District, appeals the district court's denial of reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, for his expenses in attending a private school. We must decide whether a student who never received special education and related services from a school district nevertheless may recover reimbursement for the costs of private school education. We conclude that such a student is not barred as a matter of law from receiving reimbursement. In the IDEA, Congress conferred broad discretion on the courts to provide appropriate equitable relief, including reimbursement for attendance at a private school. Later amendments clarifying the relevant considerations for those students who previously received special education and related services do not apply to students, like T.A., who never received special education and related services. Because the district court applied an improper legal framework to T.A.'s claim for reimbursement under general principles of equity, we reverse and remand for reconsideration.

### FACTUAL AND PROCEDURAL HISTORY

T.A. was born on September 11, 1985. He resided at all relevant times in the Forest Grove School District. T.A. was

enrolled in the School District from kindergarten until the spring semester of his junior year in high school, when his parents removed him from public school and enrolled him in a residential private school. Throughout his time in public school, T.A. experienced difficulty paying attention in class and completing his school work, but he successfully passed from grade to grade due, in part, to extensive at-home help from his parents and sister. T.A. never received special education and related services from the School District.

During his time in public school, the School District evaluated T.A. for a disability only once, in 2001. In December 2000, T.A.'s guidance counselor suspected that T.A. might have a learning disability and referred him for an evaluation for special education services. In internal meetings in early 2001, the School District's staff discussed the possibility that T.A. might have Attention Deficit Hyperactivity Disorder ("ADHD"). The notes from a January 16, 2001, meeting state "Maybe ADD/ADHD?" and the notes from a February 13, 2001, meeting mention "suspected ADHD." T.A.'s parents were neither present at the meetings nor informed of the School District staff's suspicion that T.A. might have ADHD. T.A.'s parents did not request evaluation for ADHD, and T.A. was evaluated only for a learning disability.[1]

Several psychologists and educational specialists examined T.A. and administered tests throughout the first half of 2001. On June 13, 2001, the team of specialists unanimously concluded that T.A. did not have a learning disability and therefore was ineligible for special education. T.A.'s mother, who attended the meeting, agreed with that determination. The

---

[1]ADHD is classified as a mental disorder. A person with ADHD often has symptoms similar to those experienced by a person with a learning disability, but ADHD is a disorder distinct from learning disabilities. *See generally* Nat'l Inst. of Mental Health, Attention Deficit Hyperactivity Disorder (2006), *available at* http://www.nimh.nih.gov/publicat/adhd.cfm. The evaluation of T.A. for a learning disability therefore did not encompass an evaluation for ADHD.

school psychologist completed his report in September 2001, stating that T.A. was not eligible for special education under the IDEA on the basis of a learning disability, but "[p]ossible 504."[2] No one ever followed up on either the reference to "[p]ossible 504" in the psychologist's report or the references to "suspected ADHD" in the School District's staff meeting notes.

At some point during 2002, T.A. began using marijuana. In early 2003, his use became regular, and he exhibited noticeable personality changes. On February 11, 2003, T.A. ran away from home. The police brought him back a few days later. T.A.'s parents took him to a psychologist and, eventually, to a hospital emergency room.

Dr. Fulop, a psychologist hired by T.A.'s parents, met with T.A. a number of times in early 2003. Dr. Fulop held several lengthy sessions immediately after T.A. ran away from home. On March 15, 2003, Dr. Fulop diagnosed T.A. with ADHD, depression, math disorder, and cannabis abuse. Dr. Fulop recommended a residential program for T.A. because of T.A.'s failure to live up to his potential in school, his difficulties at home, his attitude toward school, his sense of hopelessness, and his drug problem.

In response to T.A.'s behavior, T.A.'s parents removed him from the School District's public high school and, in March 2003, sent him to a three-week program at Catherine Freer Wilderness Therapy Expeditions. The discharge report written by Freer's staff identified T.A.'s primary diagnosis as cannabis dependence and his secondary diagnosis as depression.

Soon after T.A. completed the Freer Expedition, on March 24, 2003, his parents enrolled him in Mount Bachelor Acad-

---

[2]Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), gives certain rights to students with disabilities. This appeal concerns only the IDEA.

emy, a residential private school that describes itself as "designed for children who may have academic, behavioral, emotional, or motivational problems." Although T.A. committed a number of serious rule violations at Mount Bachelor Academy, he graduated in June 2004. He also would have graduated from public high school in 2004 had he remained there.

On March 28, 2003, four days after enrolling T.A. at Mount Bachelor Academy, T.A.'s parents hired a lawyer. On April 18, 2003, they requested a hearing pursuant to 20 U.S.C. § 1415(f) and sought (among other remedies) an order requiring the School District to evaluate T.A. in all areas of suspected disability. The Office of Administrative Hearings for the State of Oregon initiated a hearing in May 2003, but the assigned hearing officer continued the matter to allow the School District to evaluate T.A.

During the summer months of 2003, several medical and educational specialists from the School District evaluated T.A. On July 7, 2003, a multi-disciplinary team of school officials convened to determine T.A.'s eligibility under the IDEA. The team acknowledged T.A.'s learning difficulties, his diagnosis of ADHD, and his depression, but a majority found that T.A. did not qualify under the IDEA in the areas of learning disability, ADHD, or depression, because those diagnoses did not have a severe effect on T.A.'s educational performance. On August 26, 2003, a similar team convened and determined that T.A. was ineligible for services or accommodations under § 504 of the Rehabilitation Act of 1973.

The administrative hearing then resumed in September 2003. Both parties submitted evidence. The evidence included the extensive history recounted above. In addition, another psychologist, Dr. Callum, examined T.A.'s records and testified at the hearing that T.A.'s ADHD "seems to be more of a secondary, possibly, tertiary" cause of his difficulties. She

concluded that T.A. would be able to complete public high school without any services beyond those given to all students. She did state, however, that the references to the possibility of ADHD in the meeting notes following the 2001 referral would have caused her to evaluate T.A. for ADHD.

On January 26, 2004, the Hearing Officer issued a lengthy opinion that contained extensive findings of fact and conclusions of law. She held that T.A. was disabled and therefore eligible for special education under the IDEA and § 504 of the Rehabilitation Act of 1973; that the School District had failed to offer T.A. a free appropriate public education; that the School District was not responsible for the costs of the Freer Expedition or the evaluation by Dr. Fulop; but that the School District was responsible for the costs of sending T.A. to Mount Bachelor Academy. Monthly tuition at Mount Bachelor Academy was $5,200.

The School District appealed to the district court pursuant to 20 U.S.C. § 1415(i), arguing that the Hearing Officer erred by granting reimbursement for T.A.'s tuition at Mount Bachelor Academy.[3] According to the School District, reimbursement was unwarranted because T.A. unilaterally withdrew from public school without providing prior notice to the School District, he never received special education and related services from the School District, and he withdrew for reasons unrelated to his disability (that is, substance abuse and behavioral problems).

The district court reversed the Hearing Officer's grant of reimbursement to T.A. The court adopted all of the Hearing Officer's findings of fact, but held that the Hearing Officer had erred as a matter of law in granting private school reimbursement. The district court held that T.A. was statutorily ineligible for reimbursement under 20 U.S.C.

---

[3]T.A. did not cross-appeal the denial of reimbursement for the costs of the Freer Expedition or the evaluation by Dr. Fulop.

§ 1412(a)(10)(C). The court also held that, "[e]ven assuming that tuition reimbursement may be ordered . . . , under general principles of equity . . . , the facts in this case do not support such an exercise of equity."

T.A. timely appealed to this court. This case was originally scheduled for oral argument on May 9, 2007. On May 3, we granted the parties' joint motion to waive oral argument and, at the same time, ordered supplemental briefing. On August 8, we referred the case to mediation and deferred submission pending the Supreme Court's decision in *Frank G. v. Board of Education*, 459 F.3d 356 (2d Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3248 (U.S. Oct. 23, 2006) (No. 06-580), *cert. denied*, 128 S. Ct. 436 (2007). On September 18, we granted the parties' joint motion to defer mediation until after the Supreme Court's resolution of a different Second Circuit case addressing the same issue. *See Bd. of Educ. v. Tom F.*, 2005 WL 22866 (S.D.N.Y. 2005) (unpublished decision), *vacated*, 193 F. App'x 26 (2d Cir. 2006) (unpublished decision) (summarily reversing the district court's decision and remanding in light of *Frank G.*), *cert. granted*, 127 S. Ct. 1393 (2007), *aff'd*, 128 S. Ct. 1 (2007) (per curiam).

On October 10, 2007, the Supreme Court affirmed without opinion the Second Circuit's decision in *Tom F.* by an equally divided Court. 128 S. Ct. at 1. Justice Kennedy took no part in the decision of the case. *Id.* at 2. The next week, the Supreme Court denied certiorari in *Frank G.*, 128 S. Ct. at 436, again with Justice Kennedy taking no part in the decision. Thereafter, the parties informed us that they were unable to reach agreement through mediation, and we subsequently heard oral argument and submitted the case.

## STANDARDS OF REVIEW

We review de novo questions of law. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). We therefore review de novo the legal question whether 20 U.S.C.

§ 1412(a)(10)(C) creates a categorical bar to reimbursement of private school tuition for students who have not "previously received special education and related services."

We review the district court's factual findings for clear error. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).

We review for abuse of discretion the district court's determination under principles of equity to grant or deny reimbursement for private school tuition. The text of the IDEA makes clear that the district court exercises its discretion in fashioning appropriate relief:

> In any action brought under this paragraph, *the court* —
>
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, *shall grant such relief as the court determines is appropriate*.

20 U.S.C. § 1415(i)(2)(C) (emphases added).[4] The Supreme Court has interpreted the emphasized provision as conferring "broad discretion on the court." *See Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985) ("The statute directs the court to 'grant such relief as [it] determines is appropriate.' The ordinary meaning of these words confers broad discretion on the court." (alteration in original)); *see*

---

[4]Because the parties in this case did not present any new evidence before the district court or request a further hearing, the district court's decision rested entirely on the administrative record.

*also Burlington v. Dep't of Educ.*, 736 F.2d 773, 801 (1st Cir. 1984) (holding that reimbursement is "a matter of equitable relief, committed to the sound discretion of the district court"), *aff'd*, 471 U.S. 359. In *Florence County School District Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993), the Court summarized:

> [O]nce a court holds that the public placement violated IDEA, it is authorized to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415[(i)(2)(C)]. Under this provision, equitable considerations are relevant in fashioning relief, and the court enjoys broad discretion in so doing. Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors . . . .

*Id.* at 15-16 (some citations and internal quotation marks omitted).[5]

This court therefore has applied an abuse of discretion standard when reviewing a district court's grant or denial of equitable relief. *See Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1496 (9th Cir. 1994) ("The district court exercised its discretion in denying this equitable remedy, and this court reviews for abuse of that discretion."); *see also Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006) (per curiam) ("We review the Hearing Officer's and the district court's award of compensatory education services for abuse of discretion." (citing *Parents of Student W.*, 31 F.3d at 1496)). Although we have not been entirely consistent in applying a standard of review to the district court's grant or denial of an equitable remedy,[6] no case

---

[5]Congress has amended the IDEA several times such that the lettering, but not the substance, of the subsections has changed. Throughout this opinion, we alter the identifiers to reflect the present-day version of the IDEA.

[6]In several cases, we reviewed de novo the issue of reimbursement, making an independent determination while giving appropriate deference

supports T.A.'s contention that we review *the hearing officer's decision* for abuse of discretion.[7] In any event, to the extent that our cases are unclear, we reaffirm that the text of the statute and Supreme Court precedent dictate that we review for abuse of discretion the district court's determination of appropriate equitable relief. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

## DISCUSSION

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). The Hearing Officer in this case held that T.A. qualified as disabled under the IDEA and that the School District had failed to offer him a free appropriate public education. Those issues are not before us on appeal.[8] Instead, we must determine the availability, if any,

---

to the hearing officer's findings. *See, e.g.*, *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1479 (9th Cir. 1993); *Ash v. Lake Oswego Sch. Dist., No. 7J*, 980 F.2d 585, 589 (9th Cir. 1992); *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1486 (9th Cir. 1992), *superseded by statute on other grounds as recognized in R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 938-39 (9th Cir. 2007). In other cases, we did not articulate any standard at all, granting reimbursement automatically after determining that the school district failed to provide a free appropriate public education and that the student was placed in an appropriate private school. *See, e.g.*, *Capistrano*, 59 F.3d at 896-97; *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1527 (9th Cir. 1994). It appears that, in these latter cases, the school district did not argue that equitable considerations weighed against reimbursement, so we had no reason to address the question.

[7]The hearing officer and the district court in *Park* reached the same conclusion, so we did not have to distinguish between the two conclusions. The citation to *Parents of Student W.* suggests that we review for abuse of discretion the *district court's decision* only.

[8]The School District argued before the district court that the Hearing Officer erred as a matter of law by holding that T.A. was disabled for purposes of the IDEA, but the district court did not reach the issue. Because the School District did not renew its argument before this court, we also do not address this question.

of private school reimbursement for a student, like T.A., who never received special education and related services from a school district.

T.A. concedes that, as the district court held, he does not meet the statutory requirements under 20 U.S.C. § 1412(a)(10)(C), because he had not "previously received special education and related services." He argues that reimbursement is nevertheless available as a remedy under general principles of equity pursuant to 20 U.S.C. § 1415(i)(2)(C). T.A. further argues that the district court erred in its analysis under general principles of equity. We will address each of those two arguments in turn.

A.  *Private School Reimbursement Under 20 U.S.C. § 1412(a)(10)(C)*

[1] Before 1997, the IDEA was silent on the subject of private school reimbursement, but courts had granted such reimbursement as "appropriate" relief under principles of equity pursuant to 20 U.S.C. § 1415(i)(2)(C). *See Burlington*, 471 U.S. at 370 ("[W]e are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case."); 20 U.S.C. § 1415(i)(2)(C) ("In any action brought under this paragraph, the court . . . shall grant such relief as the court determines is appropriate."). Congress amended the IDEA in 1997 to include a new section entitled "Payment for education of children enrolled in private schools without consent of or referral by the public agency." 20 U.S.C. § 1412(a)(10)(C). Clause (ii) of the new statutory section states:

> If the parents of a child with a disability, *who previously received special education and related services* under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the pub-

lic agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). Clause (iii) further states that "[t]he cost of reimbursement described in clause (ii) may be reduced or denied" if certain requirements, such as notice, are not met. *Id.* § 1412(a)(10)(C)(iii); *see also id.* § 1412(a)(10)(C)(iv) (stating exceptions to the requirements in clause (iii)).

In this case, the Hearing Officer and district court found, and neither party challenges, that T.A. never received special education and related services from a public agency. Accordingly, we must decide whether the reference in § 1412(a)(10)(C) to students "who previously received special education and related services" bars private school reimbursement for students who have not "previously received special education and related services," or whether those students remain eligible for private school reimbursement, as they were before 1997, under principles of equity pursuant to § 1415(i)(2)(C). In other words, did Congress revoke, categorically, private school reimbursement for students who have never received special education and related services from a public agency, or did Congress simply legislate concerning students who had previously received special education and related services, leaving discretion in cases such as T.A.'s in the hands of courts applying principles of equity?

**[2]** We are not the first circuit court to have addressed this question. In *Frank G.*, 459 F.3d at 367-76, the Second Circuit thoroughly analyzed the question and concluded that the reference in 20 U.S.C. § 1412(a)(10)(C)(ii) to students "who previously received special education and related services" does not create a categorical bar to recovery of private school reim-

bursement for all other students. We agree with and adopt the analysis and conclusion of the Second Circuit.

[3] The Second Circuit first examined the text of the statute. The court concluded that § 1412(a)(10)(C)(ii) is ambiguous because its text does not *clearly* create a categorical bar and because such an interpretation is in tension with the broader context of the statute. *Id.* at 368-70. The Second Circuit then applied "traditional canons of statutory construction" to the ambiguous text and reasoned that reading § 1412(a)(10)(C)(ii) to create a categorical bar "would defeat both purposes of the IDEA," which are to give children with disabilities an *appropriate* and *free* education; would not "produce[ ] a substantive effect that is compatible with the rest of the law"; and would lead to "absurd results." *Id.* at 370-72 (internal quotation marks omitted). Finally, the Second Circuit noted that its interpretation was "consistent with that of the [U.S.] Department of Education's Office of Special Education & Rehabilitative Services," *id.* at 372-73,[9] and held

---

[9]The Second Circuit quotes a letter by the U.S. Department of Education establishing its position that § 1412(a)(10)(C) does not "foreclos[e] categorically an award of reimbursement in a case in which a child has not yet been enrolled in special education and related services." *Frank G.*, 459 F.3d at 373 (quoting Letter to Susan Luger, *listed in* 65 Fed. Reg. 9178 (Feb. 23, 2000), and *reprinted in* 33 I.D.E.L.R. 126 (Mar. 19, 1999)). We note that the Department of Education's position was also set forth in the Federal Register in response to comments concerning its regulations governing the IDEA:

> [H]earing officers and courts retain their authority, recognized in *Burlington* and *Florence* . . . to award "appropriate" relief if a public agency has failed to provide FAPE [free appropriate public education], including reimbursement and compensatory services, under section [1415(i)(2)(C)(iii)] in instances in which the child has not yet received special education and related services. This authority is independent of their authority under section [1412](a)(10)(C)(ii) to award reimbursement for private placements of children who previously were receiving special education and related services from a public agency.

64 Fed. Reg. 12,406-01, 12,602 (Mar. 12, 1999).

that neither the ambiguous legislative history of § 1412(a)(10)(C)(ii) nor the First Circuit's decision in *Greenland School District v. Amy N.*, 358 F.3d 150 (1st Cir. 2004), altered its conclusion. *Frank G.*, 459 F.3d at 373-76.

[4] We see no reason to disagree with the Second Circuit's well-reasoned analysis of this issue. We emphasize in particular that the express purpose of the IDEA is "to ensure that *all* children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A) (emphasis added); *see also Burlington*, 471 U.S. at 369-70 (emphasizing this purpose).[10] Interpreting the 1997 amendments to prohibit categorically reimbursement to students who have not yet received special education and related services runs contrary to this express purpose. Additionally, it would lead to the absurd result that the parents of a child with a disability must wait (an indefinite, perhaps lengthy period) until the child has received special education in public school before sending the child to an appropriate private school, no matter how uncooperative the school district and no matter how inappropriate the special education. Further, if the school district declined to recognize a student as disabled—as occurred in this case—the student would *never* receive special education in public school and therefore would *never* be eligible for reimbursement under § 1412(a)(10)(C)(ii). "The Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." *Burlington*, 471 U.S. at 372.

─────────

[10]The dissent asserts that a "FAPE was not at issue" when T.A.'s parents removed him from public school. Dissent at 4558. But the Hearing Officer found that T.A. was disabled and that the School District failed to provide a FAPE. The district court adopted all of the Hearing Officer's factual findings, and the School District has not appealed any of those findings. T.A.'s parents also provided notice to the School District before T.A.'s final year of school. On this record, therefore, we must take as a given that T.A. was disabled and that the School District failed to provide a FAPE.

In amending the IDEA in 1997, Congress chose to specify in § 1412(a)(10)(C) the requirements and factors to be considered by district courts and hearing officers when deciding whether to award reimbursement to students who previously received special education and related services. For students who never received special education and related services, however, the new provisions of § 1412(a)(10)(C) simply do not apply. For those students, reimbursement may be sought only under principles of equity pursuant to § 1415(i)(2)(C). Because T.A. never received special education and related services, § 1412(a)(10)(C) does not apply in this case.[11] He may recover reimbursement, if at all, only under principles of equity pursuant to § 1415(i)(2)(C).

[5] In conclusion, we hold that students who have not "previously received special education and related services" are eligible for reimbursement, to the same extent as before the 1997 amendments, as "appropriate" relief pursuant to § 1415(i)(2)(C).[12] The statutory requirements of § 1412(a)(10)(C) do not apply. We therefore reverse the district court's holding that T.A.'s failure to meet the requirements of § 1412(a)(10)(C) prevents private school reimbursement as a matter of law, and turn to the district court's alternative holding that T.A. was not entitled to reimbursement under general principles of equity.

B.  *Private School Reimbursement Under Principles of Equity Pursuant to 20 U.S.C. § 1415(i)(2)(C)*

[6] "Parents have an equitable right to reimbursement for

---

[11]Therefore, we express no opinion on the requirements for reimbursement under § 1412(a)(10)(C) for students who have received special education and related services.

[12]Given our clear statement that such students are eligible "to the same extent as before the 1997 amendments," we are puzzled by the dissent's unsupported assertion that our opinion "*expand[s] the principle*" of equitable reimbursement. Dissent at 4557.

the cost of providing an appropriate education when a school district has failed to offer a child a [free appropriate public education]. The conduct of both parties must be reviewed to determine whether relief is appropriate." *W.G.*, 960 F.2d at 1485-86 (citation omitted). The district court exercises its discretion in granting or denying appropriate equitable relief under § 1415(i)(2)(C), and we may reverse only if the district court has abused that discretion. We hold that the district court in this case abused its discretion in denying private school reimbursement to T.A., because the district court made two distinct legal errors in its discussion of the relevant equitable considerations. We therefore reverse the district court's denial of private school reimbursement and remand for consideration of T.A.'s claim under the proper legal framework.

[7] First, the district court erred by considering the § 1412(a)(10)(C) statutory requirements in its analysis under principles of equity. In particular, the district court found that the equitable considerations in favor of granting reimbursement did not "override the statutory requirements for tuition reimbursement." As discussed above, there are no statutory requirements for tuition reimbursement for students, like T.A., who never received special education and related services in public school. Congress' choice to legislate concerning students who previously received special education and related services did not alter the proper analysis for students who have not received special education and related services in public school, under general principles of equity pursuant to § 1415(i)(2)(C).

[8] Second, the district court applied the wrong legal standard by asserting that "tuition reimbursement may be ordered in an *extreme case* for a student not receiving special education services." (Emphasis added.) The court cited *Greenland*, 358 F.3d at 160 n.8, for that proposition, not having the benefit of our opinion today, which rejects *Greenland* in favor of the Second Circuit's approach. Nothing in § 1415(i)(2)(C), Supreme Court precedent, or our own precedent suggests that

tuition reimbursement is available only in *extreme cases* for parents who place their child in private school before receiving special education and related services in public school.

**[9]** In summary, the district court erroneously considered the inapplicable statutory requirements of § 1412(a)(10)(C) and applied an incorrect legal standard. We therefore reverse the district court's denial of reimbursement and remand for reconsideration consistent with this opinion.

On remand, the district court should consider all relevant factors in determining whether to grant reimbursement and the amount of the reimbursement, including those factors that we have identified in the past. For example, we have previously recognized that notice to the school district is a relevant equitable consideration. In *Ash*, the disabled student attended private school beginning in 1983, but his parents did not provide meaningful notice to the school district until 1989. *Ash v. Lake Oswego Sch. Dist. No. 7J*, 766 F. Supp. 852, 853-55, 864 (D. Or. 1991); *see also Ash*, 980 F.2d at 586 (incorporating the district court's account of the facts). In response to the parents' 1989 request, the school district offered to provide certain special education services, *Ash*, 766 F. Supp. at 855, but the district court found that the offered services were inadequate to meet the student's educational needs, *id.* at 863. The district court awarded reimbursement beginning in 1989, but rejected the parents' claim that private school reimbursement should be given for the whole period beginning in 1983. *Id.* at 864. We affirmed the district court's conclusion that reimbursement was warranted only beginning in 1989, after " '[the school district] had been asked to provide services to [the student] and had been given a reasonable opportunity to complete the process of evaluating [the student] and making a placement recommendation.' " *Ash*, 980 F.2d at 589 (quoting *Ash*, 766 F. Supp. at 864).

In this case, T.A.'s parents did not notify the School District before removing T.A. from public school. Instead,

shortly after enrolling T.A. in private school, T.A.'s parents notified the School District, attended several meetings with school officials, and made T.A. available for evaluation. At the conclusion of its evaluation in July 2003, the School District nevertheless concluded that T.A. was not disabled and therefore declined to offer him special education services under the IDEA. In other words, after "[the School District] had been asked to provide services to [T.A.] and had been given a reasonable opportunity to complete the process of evaluating [T.A.] and making a placement recommendation," *id.* (internal quotation marks omitted), the School District still failed to recognize T.A. as disabled or to offer him a free appropriate education. Thus, the district court would be within its discretion to consider notice as a relevant factor in its reimbursement determination.

Additionally, as we have noted in other cases, "[f]actors to be considered [by the district court] include[ ] the existence of other, more suitable placements, the effort expended by the parent[s] in securing alternative placements[,] and the general cooperative or uncooperative position of the school district." *W.G.*, 960 F.2d at 1487 (internal quotation marks omitted); *accord Adams v. Oregon*, 195 F.3d 1141, 1151 (9th Cir. 1999); *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1161 (5th Cir. 1986). We are mindful that the Hearing Officer found that T.A.'s parents sent him to Mount Bachelor Academy not only because of his disabilities, but also for reasons unrelated to his disabilities (i.e., substance abuse and behavioral problems), and the district court would be acting within its discretion to consider that factor as well.

REVERSED and REMANDED.

RYMER, Circuit Judge, dissenting:

I part company because I don't believe this is a *Burlington*[1] case calling for equitable reimbursement, or that we should adopt the reasoning of the Second Circuit in *Frank G. v. Board of Education of Hyde Park*, 459 F.3d 356 (2d Cir. 2006).

I read *Burlington, Florence County School District Four v. Carter*, 510 U.S. 7 (1993), 20 U.S.C. § 1412(a)(10)(C), and the regulations,[2] as indicating that tuition reimbursement for unilateral private placements is available under principles of equity only when FAPE was at issue before the child was withdrawn from public school and the school district had improperly denied a free and appropriate education. This was true in each of these cases, yet is not true here. Even if Congress meant the 1997 amendments to preserve equitable reimbursement where the child has never been enrolled in special education and related services, I doubt that it intended to *expand* the principle. At most, it seems to me, § 1415(i)(2)(C) carries forward the pre-1997 law on equitable relief. And as I see it, this case does not fall within the *Burlington* heartland because FAPE was not at issue when T.A.'s parents unilaterally withdrew him from the public sector.

In 2001, while T.A. was in public school, T.A.'s mother explicitly agreed with the school district's assessment that T.A. was not eligible for special education services. T.A. was taken out of public school and enrolled in a three-week wilderness program because he had begun to binge on marijuana and had run away from home in early 2003. No Independent Education Plan (IEP) had been requested, proposed, or disputed before then. Likewise, no IEP was on the table prior to

---

[1] *Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359 (1985).

[2] *See* 34 C.F.R. § 300.403 (1999) ("Placement of children by parents if FAPE is at issue"); 34 C.F.R. § 300.148 (2006) ("Placement of children by parents when FAPE is at issue").

T.A.'s enrollment at Mt. Bachelor Academy. Thus, unlike "all *Burlington* reimbursement cases," where "the parents' rejection of the school district's proposed IEP is the very reason for the parents' decision to put their child in a private school," *Carter*, 510 U.S. at 13, T.A.'s parents decided to put him in a private school for reasons of their own. Accordingly, T.A.'s parents have no right to equitable, retroactive reimbursement for private placement expenses.

This squares with the statutory scheme as well. If FAPE were *not* at issue and T.A. was *not* receiving special education and related services before withdrawal from public school, then he was being provided a free appropriate public education. A local educational agency that has made a free appropriate public education available has no obligation to pay the cost of education (including special education and related services) of a child with a disability at a private school when the parents elect the private placement. 20 U.S.C. § 1412(a)(10) (C)(i). However, if a child *has* previously received special education and related services, costs of a private placement may be reimbursed if a court or hearing officer finds that the school district had not made a free appropriate public education available to the child in a timely manner prior to the private enrollment. *Id*. § 1412(a)(10)(C)(ii).[3]

That FAPE was not at issue before T.A. was withdrawn also distances this case from *Frank G.*, upon which the majority relies, for there the school district *had* prepared an IEP with which the parents were dissatisfied at the time of the private placement. This case is far closer factually to *Greenland School District v. Amy N.,* 358 F.3d 150 (1st Cir. 2004),

---

[3]In the latter situation, the cost of reimbursement may be reduced or denied if the parents at the latest IEP meeting failed to tell the IEP team they were rejecting the public agency's proposed placement, or the parents had not given 10 days notice to the district prior to removal; the parents didn't cooperate; or the parents' actions are found to be unreasonable. *Id.* § 1412(a)(10)(C)(iii).

where — as here — FAPE was *not* at issue when the child's parents unilaterally removed her from public school. If it were necessary to choose between *Frank G.* and *Greenland*, *Greenland* is the more analogous precedent. But even on the majority's take, it seems unnecessary to me to embrace (or reject) the rationale of either case to resolve T.A.'s appeal. The court could simply hold, consistent with our precedent in *Ash*, that the ball game changed once a due process hearing was requested. *See Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 589 (9th Cir. 1992) (recognizing right to reimbursement after the school district was first asked to provide services and had been given a reasonable opportunity to complete the process of evaluating the child and making a placement recommendation).[4]

This said, assuming that equitable principles extend to this situation, I do not understand the court's opinion to compel a finding of reimbursement on remand. T.A. was unilaterally pulled from public school and placed in private school on account of drug issues, not learning disabilities; the parents receded from their position that T.A. was not entitled to special education services only after voluntarily placing him in private school and consulting an attorney; and there is no evidence of any change in T.A.'s need for special education services in the meantime. In these circumstances, the district

---

[4]It is unclear to me whether a right to an IEP arose at that time given the district's "child find" obligations, *see, e.g.,* § 1412(a)(10)(A)(ii), because the issue was not briefed in these terms. But whatever the effect, it seems plausible that the case at that point would be on a different track from the one taken here because by then, T.A. was voluntarily in private school, entirely at the parents' initiative, without involvement of the school district and without FAPE being at issue. Otherwise, there would be no point to the distinctions drawn in the statute between children enrolled in private schools by their parents without consent of, or referral by, the school district and those placed in private schools by public agencies, *see* §§ 1412(a)(10)(A), (B), and (C); or to the requirements and limitations set forth in § 1412(a)(10)(C) with respect to the payment of costs for education of children placed in private schools without district involvement.

court may well find again that T.A.'s parents assumed the financial risk of their own decision and that reimbursement is not "appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).