**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EMMA C., by and through her Guardian Ad Litem; et al., <br><br>  Plaintiffs-Appellees, <br><br> v. <br><br> DELAINE EASTIN, individually and in her capacity as Superintendent of Public Instruction for the State of California and CALIFORNIA DEPARTMENT OF EDUCATION, <br><br>  Defendants-Appellants. | No.  14-16479 <br><br> D.C. No. 3:96-cv-04179-TEH <br><br><br> MEMORANDUM[*] |
| EMMA C., by and through her Guardian Ad Litem; et al., <br><br>  Plaintiffs-Appellees, <br><br> v. <br><br> STATE BOARD OF EDUCATION, <br><br>  Defendant-Appellant. | No.  14-16557 <br><br> D.C. No. 3:96-cv-04179-TEH |

---

 [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| EMMA C., by and through her Guardian Ad Litem; et al., | Nos. 15-16853 |
| | 15-17545 |
| Plaintiffs-Appellees, | D.C. No. 3:96-cv-04179-TEH |
| v. | |
| DELAINE EASTIN, individually and in her capacity as Superintendent of Public Instruction for the State of California; et al., | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, District Judge, Presiding

Argued and Submitted November 16, 2016
San Francisco, California

Before:  THOMAS, Chief Judge, and KOZINSKI and FRIEDLAND, Circuit Judges.

In this consolidated appeal, the California Department of Education ("Department of Education"), California Superintendent of Public Instruction, and California State Board of Education (collectively "the State") appeal the district court's orders requiring the parties to develop and implement a corrective action plan ("Action Plan").  The Action Plan was designed to ensure that the Department of Education's state-level monitoring system would be adequate to guarantee that

2

the Ravenswood City School District ("Ravenswood") continues to satisfy its obligations under the parties' first amended consent decree ("Consent Decree") and the parties' joint submissions to the Court, the most relevant of which is the Fifth Joint Statement. The parties entered into the Consent Decree to bring Ravenswood and the State into compliance with the Individuals with Disabilities Education Act ("IDEA"). We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1. The plaintiffs have standing to bring this action, as parties and intended beneficiaries of the Consent Decree. *Hook v. State of Ariz., Dept. of Corrs.*, 972 F.2d 1012, 1014 (9th Cir. 1992). They have also have suffered a direct, concrete, and particularized injury caused by Department of Education's monitoring system that would be remedied by the Action Plan. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

2. Because this dispute arises under the Consent Decree, and not under any particular provision of the IDEA, the plaintiffs have the right to enforce the State's obligations under the Consent Decree. In addition, we note that the State has waited more than a decade to raise its argument that the plaintiffs have no private right of action. Contrary to counsel's argument at hearing, whether the plaintiffs have a right of action is not a jurisdictional question, and that argument may be waived. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

3

134 S. Ct. 1377, 1386–88 & n.4 (2014); *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1065 n.17 (9th Cir. 2008). By waiting so long and signing the Consent Decree, the State has waived this defense.

3.     The district court retained jurisdiction to enforce the Consent Decree, as a judgment of the court. *United States v. FMC Corp.*, 531 F.3d 813, 819 (9th Cir. 2008). Further, the language of the Consent Decree and the Fifth Joint Statement is clear and explicit, and it manifests the parties' mutual intent to grant the district court broad authority to enforce the Consent Decree.[1] The language of the Consent Decree and Fifth Joint Statement evinces the parties' intent to make the Department of Education's state-level monitoring system as applied to Ravenswood subject to review by the appointed Court Monitor. The parties intended to grant the district court broad authority to ensure the adequacy of the

---

[1] For instance, under Section 4.1 of the Consent Decree, the "[Department of Education] shall implement an effective monitoring system" to "ensure Ravenswood's performance of all its obligations." Under Section 13.0 of the Consent Decree, "after an appropriate hearing, the Court may order any appropriate relief" to ensure compliance with and implementation of the Consent Decree. Section 13.0 also allows the district court to release the Department of Education from its obligations under the Consent Decree once the Department of Education's "state-level system in place is capable of ensuring continued compliance with the law and the provision of [a free appropriate public education] to children with disabilities in Ravenswood." In addition, under Sections 6.1.7 and 7.3, the Court Monitor or Plaintiffs "may request that the Court issue an order to implement or effectuate [the Consent Decree]," or "any other order at any time".

monitoring system, including the authority to order the development and implementation of an Action Plan.

4.    The district court did not exceed its subject matter jurisdiction or the scope of the Consent Decree in its orders.[2]  The Consent Decree and the Fifth Joint Statement explicitly authorize the Court Monitor to provide the district court with determinations and recommendations about the Department of Education's state-level monitoring system as applied to Ravenswood, and they authorize the district court to order implementation of those recommendations.  The State itself has proposed only a statewide system to meet its monitoring obligations under the Consent Decree, and the district court's order merely reflected this choice by the State in ordering relief as to that system.  Although a plaintiff who alleges no statewide injuries has no standing to pursue statewide relief, *see, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 358 (1996), and although injunctions must not be overbroad, *see, e.g.*, *Horne v. Flores*, 557 U.S. 433, 470–71 (2009), here the State itself appears to have chosen to turn its state-level obligation under the Consent Decree

---

[2] Interpretation of a consent decree is a question of law we review *de novo*. *Gates v. Rowland*, 39 F.3d 1439, 1444 (9th Cir. 1994) (citation omitted).  We do, however, provide some deference to the district court "based on the [district] court's extensive oversight of the decree from the commencement of the litigation to the current appeal." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1119 (9th Cir. 2009) (citation and internal quotation marks omitted).

5

to monitor Ravenswood into an obligation to monitor school districts statewide—by choosing to present the court with only a uniform statewide monitoring approach. Indeed, the district court emphasized that the Action Plan does not exceed the scope of the Consent Decree "[s]imply because the corrective action steps the Monitor recommends may require CDE—due to the nature of its administrative scheme, or other internal reasons—to implement changes in other district in addition to Ravenswood." In addition, the State's objections to the Monitor's determinations were untimely, and therefore waived under the terms of the Fifth Joint Statement. In light of these choices by the State, the scope of the injunction may be affirmed.

5. The district court's orders do not infringe on the role of the United States Department of Education, as the State claims. As the district court pointed out, there was no evidence in the record that the federal government had actually reviewed or considered the questions at issue here. Further, a federal agency "cannot usurp the power of a district court to construe the provisions of an order it has issued." *Nehmer v. U.S. Dep't of Veteran Affairs*, 494 F.3d 846, 860 (9th Cir. 2007).

6. The district court did not violate the Tenth Amendment, which reserves non-delegated power to the states. This case does not involve the power

6

of Congress, nor a question of statutory interpretation. Rather, the issues involve interpretation of the Consent Decree, entered into freely by the State on its own accord, and enforceable as a judgment of the court.

7. The district court's orders do not impermissibly bind future state officials. A party to a consent decree may request to be released from its obligations when circumstances have changed. *Flores*, 557 U.S. at 447.

8. The State was not denied due process of law. Due process requires notice and an opportunity to be heard. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Here, the State has had ample opportunities to be heard throughout the fifteen years developing the Consent Decree, joint statements, and the Action Plan in the form of "meet-and-confers," negotiations, objections, motions, and hearings. The terms of the Consent Decree and Action Plan are sufficiently specific to satisfy the notice requirements of due process. The State negotiated for and consented to the Consent Decree and the Fifth Joint Statement. It is "now in no position to object to [them] or to rely on the vagueness of [their] language as a defense." *United States v. Schafer*, 600 F.2d 1251, 1253 (9th Cir. 1979). The Action Plan is a detailed, sixty-five page document that adopts terms from the IDEA. PER 50–51; *See* 20 U.S.C. § 1416; 34 C.F.R. § 300.600–608. The terms of the IDEA are routinely interpreted and enforced by courts. *See, e.g.*,

7

*Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1088–89 (9th Cir. 2008) (articulating relevant factors to be considered in interpreting "appropriate" relief under IDEA).

**AFFIRMED**.[3]

---

[3] All pending motions are denied.