NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 1 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NEWPORT-MESA UNIFIED SCHOOL DISTRICT, a public entity, | No. 23-55351 |
| Plaintiff-Appellee, | D.C. No. 8:20-cv-01857-SPG-JEM |
| v. | |
| D. A.; D. A., on behalf of their minor child, M.A., | MEMORANDUM* |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted March 25, 2024
Pasadena, California

Before: RAWLINSON, LEE, and BRESS, Circuit Judges.

Plaintiffs allege that the Newport-Mesa Unified School District failed to
provide their son, M.A., with a "free appropriate public education" (FAPE) under
the Individuals with Disabilities Education Act (IDEA), thereby entitling plaintiffs
to reimbursement for the costs of M.A.'s private schooling. An Administrative Law

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Judge (ALJ) granted plaintiffs partial relief.  Both sides appealed the ALJ's ruling. The district court ruled for the District in full, denying plaintiffs reimbursement.

We have jurisdiction under 28 U.S.C. § 1291.  We review the district court's legal determinations de novo and its factual findings for clear error.  *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1083–84 (9th Cir. 2008).  But we give "due weight" to the ALJ's determination that a district's "individualized education program" (IEP) offers a FAPE.  *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 888 (9th Cir. 2001).  We affirm.

1.  The District's December 2017 IEP offered M.A. a FAPE.  To satisfy the IDEA, an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).  Plaintiffs have not shown that the District's December 2017 IEP fell below this standard.

*First*, the December 2017 IEP did not deny M.A. a FAPE by placing him in the general education classroom for 95 percent of the school day.  The IDEA mandates that school districts "ensure that children with disabilities are educated alongside their non-disabled peers '[t]o the maximum extent appropriate.'"  *D. R. by & through R. R. v. Redondo Beach Unified Sch. Dist.*, 56 F.4th 636, 643 (9th Cir. 2022) (quoting 20 U.S.C. § 1412(a)(5)(A)). Plaintiffs argue that M.A.'s 95-percent regular classroom placement was improper because M.A. experienced persistent

bullying there. But plaintiffs' argument relies almost entirely on the testimony of their expert, Dr. Shinn, whom the ALJ deemed "unpersuasive," including because she "did not consider the personal accounts from [District] staff." The ALJ meanwhile reasonably credited the District's witnesses, given their personal experience with M.A. *See Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1053 (9th Cir. 2022).

*Second*, the December 2017 IEP stated sufficient goals to "enable [M.A.] to be involved in and make progress in the general education curriculum." 20 U.S.C. § 1414(d)(1)(A)(i)(II)(aa). Plaintiffs fault the IEP for failing to include a goal that would help manage M.A.'s anxiety or depression and to divide its "social autopsy" goal into four goals. Yet the former was reasonably covered under other goals, and "[a]n IEP is not required to contain every goal from which a student might benefit." *Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1133 (9th Cir. 2021). Plaintiffs do not explain why the omission of their desired goals prevented the IEP from facilitating M.A.'s educational development.

*Third*, the December 2017 IEP offered adequate services and accommodations in furtherance of its annual goals. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(IV). Plaintiffs argue that the IEP was deficient because it omitted additional specialized writing instruction, more individual speech and language services, further measures to ensure M.A.'s use of his frequency modulation (FM)

microphone system, and appropriate social and emotional services. Yet, M.A.'s grades, standardized test scores, and other evidence of performance indicated that M.A. was at that time making progress in his writing and language abilities. Moreover, the District at the December 2017 IEP meeting offered M.A. a variety of counseling services. There is no indication that the District needed to offer further services or accommodations in order to provide M.A. with a FAPE.

2. The District's May 2019 IEP also did not deny M.A. a FAPE. That IEP reduced M.A.'s time in the general education classroom to only 60 percent of the school day, while also adding new goals and accommodations. Plaintiffs challenge these offerings on much the same grounds as they did those in the December 2017 IEP. We conclude there is insufficient basis for concluding that the May 2019 IEP—which was by all accounts more robust than the December 2017 IEP—was not appropriately conducive to M.A.'s educational progress.

3. Plaintiffs allege that the District denied M.A. a FAPE through several procedural violations of the IDEA. None of plaintiffs' allegations has merit.

*First*, the District was not required to conduct an annual IEP review in April 2018. "Generally, [the District] must prepare an annual IEP for students with a disability in its jurisdiction." *Capistrano*, 21 F.4th at 1137 (citing 20 U.S.C. §§ 1414(d)(2)(A), (4)(A)). But "when a child has been enrolled in private school by h[is] parents, the district only needs to prepare an IEP if the parents ask for one." *Id.*

at 1138. Here, plaintiffs enrolled M.A. in private school in January 2018 and did not request an IEP review after that point. Plaintiffs argue that *Capistrano* is distinguishable because the parents in that case expressed an intent for their child to remain permanently in private school, whereas plaintiffs here only indicated that they were keeping M.A. in private school at this time. We do not view that claimed distinction as material under the logic of *Capistrano*. *See id.* at 1139–40.

Plaintiffs additionally argue they lacked adequate notice that the District would not automatically review M.A.'s IEP because the District's "Certification of Intent" form was ambiguous on that point. Setting aside the lack of record evidence on plaintiffs' claimed understanding of these forms, the District also sent plaintiffs a separate letter expressly requesting that they notify the District if they "would like [the District] to hold [M.A.'s] 2018 Annual IEP," and plaintiffs never responded. The suggestion that plaintiffs did not understand the process is also undermined by plaintiffs' apparent familiarity with the IEP procedures, which the record broadly reflects. For all these reasons, there was no procedural violation under *Capistrano*.

*Second*, the District's five-week delay in conducting M.A.'s triennial reevaluation did not deny M.A. a FAPE. Even assuming this delay resulted in the District violating its obligation to reevaluate special needs children "at least once every 3 years," 20 U.S.C. § 1414 (a)(2)(B)(ii), a procedural violation of the IDEA denies a child a FAPE only if it "results in the loss of educational opportunity or

5

seriously infringes the parents' opportunity to participate in the IEP formation process." *J.W. ex rel. J.E.W v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 451–52 (9th Cir. 2010). In this case, there is no indication that the five-week delay had either effect.

*Third*, the District's triennial reevaluation was "sufficiently comprehensive to identify all of [M.A.'s] special education and related services needs." 34 C.F.R. § 300.304(c)(6). Plaintiffs contend that the reevaluation was incomplete because it omitted "self-rating scales," a "narrow writing assessment," and a "conversation sample." But plaintiffs here rely primarily on the testimony of their experts, which the ALJ reasonably discounted as unpersuasive. *See Crofts*, 22 F.4th at 1053. Nor did the absence of two staff members from the classroom observation period render the reevaluation inadequate, given the other District staff members who observed M.A.

*Fourth*, the District was not required to initiate a due process hearing after plaintiffs rejected its May 2019 IEP. In this case, the school district's obligation to defend its IEP via a due process proceeding applies only where parents partially consent to the IEP and the district "'determines that the proposed special education program component to which the parent[s] do[] not consent is necessary to provide a' FAPE." *Capistrano*, 21 F.4th at 1136 (quoting Cal. Educ. Code § 56346(f)). Because plaintiffs here consented to no part of the May 2019 IEP and were "seeking

a different program than what [the District] consider[ed] sufficient to provide a FAPE," *id.*, the District did not need to file for due process.

*Fifth*, the District did not deny M.A. a FAPE by failing to provide plaintiffs with a prior written notice (PWN) regarding its COVID-19 closure. The IDEA requires districts to "provide [a PWN] to a child's parents whenever the agency 'proposes to initiate or change' or 'refuses to initiate or change the identification, evaluation, or educational placement of the child. . . .'" *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1183 (9th Cir. 2010) (quoting 20 U.S.C. § 1415(b)(3)). Because M.A. was not enrolled with the District during its COVID-19 closure, the closure effected no "change" in his education. And even if the District was required to offer plaintiffs a PWN, there is no evidence that its failure to do so cost M.A. any educational benefit. *See Fresno*, 626 F.3d at 451–52. Any error was thus harmless.

**AFFIRMED.**